**TARTER KRINSKY & DROGIN LLP**
*Proposed Attorneys for Erica Itzhak*
*Debtor and Debtor-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
smarkowitz@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

In re:

ERICA ITZHAK,

                Debtor.

:
:
:
:
:
:
:
:

Chapter 11

Case No. 24-10669 (JPM)

------------------------------------------------------------ x

## DEBTOR'S PLAN OF REORGANIZATION DATED JULY 17, 2024
### *(SUBCHAPTER V)*

# TABLE OF CONTENTS

I INTRODUCTION .................................................................................................................1

    A.  THE PLAN CONFIRMATION HEARING ...............................................................1
    B.  BACKGROUND...........................................................................................................2
    C.  THE DEBTOR'S ASSETS ..........................................................................................4
    D.  BAR DATE AND OBJECTIONS TO CLAIMS..........................................................5

II DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION ......................6

    A.  Interpretation, Rules of Construction, Computation of Time, and Choice of Law .............13

III DESIGNATION OF CLASSES OF CLAIMS..................................................................14

    A.  Class 1 – Quick Borrow's Secured Claim ...................................................................14
    B.  Class 2 – TD Bank's Secured Claim ..........................................................................15
    C.  Class 3 – Volvo Financial's Secured Claim ................................................................15
    D.  Class 4 – All Unsecured Claims .................................................................................15

IV TREATMENT OF CLASSES OF CLAIMS AND UNCLASSIFIED CLAIMS .................15

    A.  Unclassified Claims ...................................................................................................15

        1.  Administrative Claims.....................................................................................15
        2.  Priority Tax Claims ........................................................................................16

    B.  Treatment of Class 1 Secured Claim of Quick Borrow ................................................17
    C.  Treatment of Class 2 Secured Claim of TD Bank .......................................................17
    D.  Treatment of Class 3 Secured Claim of Volvo Financial .............................................18
    E.  Treatment of Allowed Class 4 Unsecured Claims .......................................................18

V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................18

    A.  Treatment of Executory Contracts and Unexpired Leases...........................................18

VI MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN.........................19

    A.  Implementation...........................................................................................................19
    B.  Funding of the Plan ...................................................................................................19

VII   LIQUIDATION ANALYSIS ...............................................................................19

VIII PROVISIONS GOVERNING DISTRIBUTIONS........................................................20

IX OBJECTIONS TO CLAIMS AND PROCEDURES FOR RESOLVING AND TREATING CLAIMS......20

    A.  Objections to Claims .................................................................................................20
    B.  Resolution of Disputed Claims ..................................................................................21
    C.  Estimation .................................................................................................................21
    D.  Allowance of Disputed Claims...................................................................................21

X PROVISIONS CONCERNING CAUSES OF ACTION ....................................................21

XI PLAN INJUNCTION AND VESTING OF PROPERTY .................................................21

XII CRAM DOWN ...........................................................................................................23

XIII RETENTION OF JURISDICTION ............................................................................23

    A.  Retained Jurisdiction .................................................................................................23

XIV NOTICES .................................................................................................................24

**XV MISCELLANEOUS PROVISIONS**.................................................................................**25**

    **A. Applicable Law**..............................................................................................**25**

    **B. Unenforceability of Particular Provisions**...................................................**25**

    **C. Revocation and Withdrawal Prior to Confirmation** .....................................**26**

    **D. Amendment and Modification**......................................................................**26**

    **E. Post-Confirmation Professional Fees**..........................................................**26**

    **F. Binding Effect of Plan** ................................................................................**27**

# I

## INTRODUCTION

Erica Itzhak (the "Debtor") hereby proposes the following plan of reorganization (the "Plan") pursuant to Subchapter V Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Capitalized terms used in the Plan have the meanings ascribed to such terms in Article II of the Plan.

The Plan provides the Debtor's creditors with information to enable them to make an informed judgment concerning the method of which the Debtor intends to reorganize and emerge from bankruptcy. **If the Bankruptcy Court confirms the Plan, it will be binding on the Debtor, her creditors and other interested parties.**

The Plan provides for the Debtor to pay Quick Borrow the full amount of its Allowed Secured Claim plus interest at 10% per annum over a period of five (5) years from the Effective Date. The Plan provides the Debtor will continue to pay TD Auto Finance, LLC and Volvo Car Financial Services LLC in accordance with their contractual terms. All of the Debtor's unsecured creditors including Kahlon and Atlas shall be paid their *Pro Rata* share from the Debtor's disposable income which has been determined to be $1,000 per month. Payments to holders of Allowed Unsecured Claims shall be made on a quarterly basis over a period of sixty (60) months from the Confirmation Date. If Class 1 or Class 4 of the Plan does not accept the Plan, the Debtor intends to seek confirmation of the Plan under section 1191(b) of the Bankruptcy Code.

## A. THE PLAN CONFIRMATION HEARING

Pursuant to section 1128 of the Bankruptcy Code, a Confirmation Hearing will be held on **September ___, 2024 at ____ a.m.** The Bankruptcy Court may adjourn the Confirmation Hearing from time to time without further notice except for the announcement of the adjourned date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

Any objection to the Confirmation of the Plan must be made in writing and specify in detail the name and address of the objecting party, all grounds for the objection and the amount of the Claim held by the objecting party. Any such objections must be filed with the Bankruptcy Court and served so that it is received by the Bankruptcy Court, the Office of the United States Trustee, the Subchapter V trustee, and counsel for the Debtor on or before **September \_\_\_, 2024.** Objections to Confirmation of the Plan are governed by Bankruptcy Rule 9014.

**Failure by a Creditor to timely file an objection to the Plan shall constitute an agreement, by silence, to accept the terms contained in this Plan.**

Any interested party desiring further information about the Plan should contact counsel of record for the Debtor, Scott S. Markowitz, Esq., Tarter Krinsky & Drogin LLP, 1350 Broadway, 11th Floor, New York, NY 10018, Tel: (212) 216-8005, smarkowitz@tarterkrinsky.com.

## B.    <u>BACKGROUND</u>

On April 19, 2024, the Debtor filed a Chapter 13 bankruptcy petition with the Clerk of the Court. Subsequent thereto, the Debtor filed a motion to convert her Chapter 13 case to a Subchapter V Chapter 11 case. By order dated June 28, 2024, the Debtor's bankruptcy case was converted to a Subchapter V. Yann Geron, Esq. was appointed the Subchapter V trustee.

The Debtor is a practicing attorney and practices law under the law firm Erica T. Yitzhak, Esq., P.C.

Several years prior to the Petition Date, the Debtor was retained by Atlas to seek to recover certain monies allegedly due to Atlas. Atlas is owned and/or controlled by Kahlon. In an attempt to collect the monies allegedly due Atlas, the Debtor drafted a complaint and sued Lambe and SunRay in the State Court Action. The defendants in the State Court Action moved to dismiss the lawsuit on various grounds which were granted without leave to file an amended complaint.

In May 2013, SunRay and Lambe filed an action in the United States District Court for the Eastern District of New York asserting tort and contractual based causes of action against Atlas, Kahlon and the Debtor (the "Federal Court Action"). From January 20, 2016 to February 1, 2016, a jury trial in the Federal Court Action was conducted. On January 29, 2016, prior to the jury verdict, and pursuant to a settlement agreement, SunRay and Lambe settled all their claims in the Federal Court Action against the Debtor. Verner represented SunRay and Lambe in the Federal Court Action. The Debtor's malpractice carrier contributed $600,000 (the balance of the policy) to facilitate the settlement against the Debtor. As part of the settlement, SunRay and Lambe agreed to indemnify the Debtor if Kahlon and/or Atlas subsequently commenced a legal malpractice action against the Debtor. Pursuant to the settlement, Verner was obligated to defend the Debtor in any subsequently filed malpractice action.

On February 1, 2016, the jury entered a verdict in the Federal Court Action in favor of SunRay and Lambe and against Kahlon and Atlas in the amount of $1 million. In March 2016, Kahlon and Atlas commenced a malpractice action against the Debtor. Kahlon and Atlas obtained summary judgment in the malpractice action against the Debtor in the amount of $1 million with interest from September 27, 2016. A judgment was entered against the Debtor in the malpractice action in the amount $1,503,013.70 on April 29, 2022 (the "Judgment").

The Debtor obtained a judgment against Lambe and SunRay in the same amount of the Judgment based upon the indemnification provision in the settlement agreement in the Federal Court Action. The Debtor continues in her efforts to recover from Lambe and SunRay on account of her judgment. The Debtor also is seeking turnover from Verner from certain monies which were deposited into his escrow account from the monies recovered in the Federal Court Action. The Debtor also commenced a malpractice lawsuit against Verner which is pending in the United States District Court for the Southern District of New York.

3

The Debtor retained new counsel and filed a new motion to renew and to vacate the Judgment based primarily upon rule 13 of the Federal Rules of Civil Procedure. In short, the Debtor believes rule 13 of the Federal Rules of Civil Procedure bars the malpractice action as it should have been raised as a crossclaim in the Federal Court Action. Pursuant to an order of the Bankruptcy Court dated July 1, 2024, the Debtor was granted stay relief to continue her efforts to obtain vacatur of the Judgment.

## C.     THE DEBTOR'S ASSETS

### 1.     345 East 56th Street, Apartment 4D, New York, NY

The Debtor owns the cooperative apartment known as 345 East 56th Street, Apt. 4D, New York, NY (the "Apartment"). The Debtor believes the value of the Apartment is between $795,000 and $844,000. A copy of broker's opinion letter with regard to the Apartment's value is annexed hereto as **Exhibit A**. The Apartment is subject to a first mortgage held by Quick Borrow in the amount of $400,000. The Quick Borrow loan was intended to be a short term one-year loan which matured prior to the Petition Date. The Quick Borrow loan provided for a ten (10) % per annum interest rate. Kahlon, in an effort to enforce the Judgment, was attempting to execute and conduct a sheriff's sale of the Debtor's shares in the cooperative corporation which was the immediate cause of the Debtor's bankruptcy filing. It is unclear whether Kahlon's Claim is partially secured. Kahlon filed a proof of claim asserting a Secured Claim.[1] The Debtor believes Kahlon's Claim is not secured by virtue of section 547 of the Bankruptcy Code or alternatively, at worst, partially secured as its Claim is junior to Quick Borrow's first mortgage.

### 2.     10775 Sunset Ridge Circle, Boynton Beach, Florida

The Debtor owns this single-family house with her husband Lior Itzhak. This property is

---

[1] Pursuant to section 506(a)of the Bankruptcy Code, a Secured Claim is treated as a Secured Claim only up to the value of its collateral.

currently leased through April 15, 2026 at the monthly rate of $4,700. The Debtor estimates the value of the property to be approximately $750,000. Bank of America holds the first mortgage on this property in the amount of $478,000. The Debtor is not obligated on the mortgage loan. The Debtor's husband is obligated on the Bank of America loan.

**3.**     <u>Automobiles</u>

The Debtor owns a 2019 Jeep Wrangler and a 2020 Volvo XC90. Both of these automobiles are subject to liens in favor of the finance companies and the Debtor believes there is modest equity in these automobiles.

**4.**     <u>Miscellaneous Assets</u>

Aside from the above-listed assets, the Debtor's assets are modest and include typical household furnishings, jewelry and retirement accounts which are exempt from Claims of creditors. The Debtor also is the sole owner of Erica T. Yitzhak, Esq., P.C., her law firm. As set forth above, the Debtor holds a judgment against Lambe and SunRay as well as her malpractice claim against Verner.

## D.    <u>BAR DATE AND OBJECTIONS TO CLAIMS</u>

Pursuant to a notice generated by the Clerk of the Court, the last date for the Debtor's Creditors to file a proof of claim for pre-petition claims was June 28, 2024. As of July 17, 2024, a total of twenty-seven (27) Claims have been filed in the Debtor's Chapter 11 case. For the most part, the Claims are consistent with the Debtor's books and records. However, as set forth above, the Debtor continues in her efforts to obtain vacatur of the Judgment which would substantially reduce the Claims as Kahlon filed a Claim in the amount of $1,853,773.23 based on the Judgment. Kahlon filed its Claim as a Secured Claim against the Apartment. The Debtor intends to object to the classification of Kahlon's Claim and if necessary, commence an adversary

proceeding pursuant to section 547 of the Bankruptcy Code which would reclassify Kahlon's Claim to an Unsecured Claim.

To the extent the Debtor deems it prudent and/or cost effective to object to Claims, the Plan provides the Debtor has sixty (60) days from the Effective Date to file objections to filed Claims. If the Debtor fails to object to a properly filed Claim on or before sixty (60) days from the Effective Date, then such Claim will be deemed an Allowed Claim and will be entitled to the Distribution under the Plan applicable to the particular class such Claim is a member of.

## II

## DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION

In addition to those capitalized terms that are defined in other Articles of the Plan, the following terms (that appear in this Plan as capitalized terms) have the following meanings as used in this Plan.

1. **"Administrative Claim"** means any cost or expense of administration of the Chapter 11 Case allowed under section 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's estate, operating the Debtor's business, all compensation and reimbursement of expenses of professionals allowed by the Bankruptcy Court under §§ 330, 331 and 503 of the Bankruptcy Code.

2. **"Allowed Amount"** shall mean the dollar amount of an Allowed Claim.

3. **"Allowed Claim"** means a Claim against the Debtor to the extent that the Claim is allowed pursuant to this Plan, or (a) a proof of such Claim was (i) timely filed; or (ii) deemed timely filed under applicable law or by reason of an order of the Bankruptcy Court; and (b)(i) after the applicable deadlines for filing an objection to the Claim in accordance with this Plan has passed, the Debtor has not filed an objection or any such objection is withdrawn following the

expiration of such applicable deadline(s); (ii) the Claim is allowed (but only to the extent allowed) by a Final Order, or (iii) the Claim is a Claim that was Scheduled by the Debtor in accordance with Rule 1007 of the Bankruptcy Rules and not listed as disputed, contingent or unliquidated.  Prior to the time that an objection has been or may be timely filed, for the purposes of this Plan, a Claim shall be considered an Allowed Claim if (a) the Claim has been Scheduled; (b) the amount of the Claim specified in any filed proof of claim equals or is less than the amount of the Claim Scheduled by the Debtor as other than disputed, contingent or unliquidated; (c) the priority of the Claim specified in any filed proof of claim is of an equal or more junior priority than the priority of the Claim Scheduled by the Debtor; and (d) the Claim has not been Scheduled as disputed, contingent or unliquidated.

4.      **"Allowed Class Claim"** means an Allowed Claim in the particular class described.

5.      **"Apartment"** means 345 East 56th Street, Apt. 4D, New York, NY 10022.

6.      **"Atlas"** means Atlas Solar Holdings LLC, the holder of the Judgment.

7.      **"Bankruptcy Code"** means title 11 of the United States Code, as the same was in effect on the Petition Date, as amended from time to time.

8.      **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York, or such other Court as may hereafter be granted jurisdiction over the Chapter 11 Case.

9.      **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, the local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York, and the guidelines and requirements of the Office of the United States Trustee for the Southern District of New York, as each may from time to time be in effect and applicable to the Reorganization Case and proceedings therein.

10. **"Bar Date"** means June 28, 2024, which was the deadline to file proofs of claim in this Subchapter V Chapter 11 Case as previously set by the Clerk of the Court in the Chapter 13 case or any other deadline to file proof of claims set by the Bankruptcy Court or agreed to by the Debtor.

11. **"Business Day"** means any day other than a Saturday, Sunday, or a "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

12. **"Cash"** means lawful currency of the United States and cash equivalents.

13. **"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

14. **"Chapter 11 Case"** means the Debtor's Chapter 11 Case for reorganization under Chapter 11 of the Bankruptcy Code, Case Number 24-10669-jpm entitled *In re: Erica Itzhak* now pending in the Bankruptcy Court.

15. **"Claim"** means a claim against the Debtor or its property as defined in section 101(5) and construed in section 102(2) of the Bankruptcy Code.

16. **"Claimant"** means the holder of a Claim.

17. **"Claims Register"** means the list of Claims filed against the Debtor as maintained by the Clerk of the Court.

18. **"Class"** means a group of Claims consisting of Claims which are substantially similar to each other as classified pursuant to this Plan.

19. **"Clerk of the Court"** means the Clerk of the United States Bankruptcy Court for the Southern District of New York with a street address at United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004.

20. **"Confirmation"** means entry, within the meaning of Bankruptcy Rules 5003 and 9021, of an order of the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

21.     **"Confirmation Date"** means the date upon which the Confirmation Order is entered in the Bankruptcy Court.

22.     **"Confirmation Hearing"** means the hearing to be held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of this Plan.

23.     **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to §1129 of the Bankruptcy Code.

24.     **"Debtor"** means Erica Itzhak.

25.     **"Debtor's Case"** shall have the same meaning as Chapter 11 Case herein.

26.     **"Debtor-in-Possession"** means Erica Itzhak, as debtor-in-possession in this Chapter 11 Case.

27.     **"Disbursing Agent"** shall mean the Reorganized Debtor and/or the Trustee, or such other entity as may be designated by the Bankruptcy Court or by this Plan.

28.     **"Disputed Claim"** means a Claim or a request for payment of an administrative expense, as the case may be, as to which: (a) a proof of claim or a request for payment of an administrative expense, as the case may be, has been filed with the Court or deemed filed under applicable law or order of the Court; (b) an objection has been timely filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or part by a Final Order, or (iii) granted in whole or in part by a Final Order. Prior to the time that an objection has been or may be timely filed, for purposes of this Plan, a Claim shall be considered a Disputed Claim: (i) to the extent and only to the extent the amount of the Claim specified in the proof of claim exceeds the amount of any corresponding Claim listed by the Debtor in its Schedules; (ii) any corresponding Claim has been listed by the Debtor in its Schedules as disputed, contingent or unliquidated, irrespective of the amount scheduled; or (iii) if no corresponding Claim has been listed by the Debtor in its Schedules.

9

29. **"Distribution Dates"** means any Business Day on or after the Effective Date on or by which Distributions of Cash are made pursuant to this Plan.

30. **"Distributions"** means the payments of Cash to creditors and others (e.g., Professional Persons) pursuant to and required by this Plan.

31. **"Effective Date"** means the fifteenth (15) day after entry of the Confirmation Order.

32. **"Estate"** means the estate created in a Chapter 11 Case under §541 of the Bankruptcy Code.

33. **"Executory Contract"** means each agreement, contract or unexpired lease to which any Debtor is a party and which is executory within the meaning of §365 of the Bankruptcy Code.

34. **"Face Amount"** means, with respect to any Claim, (a) if the holder of such Claim has not timely filed a proof of Claim thereof with the Bankruptcy Court, the amount, if any, of such Claim Scheduled and not listed as disputed, contingent or unliquidated; (b) if the holder of such Claim has timely filed proof thereof with the Bankruptcy Court, and the Debtor has not filed an objection, the amount stated in such proof; or (c) if a Claim has become an Allowed Claim pursuant to a Final Order, the amount of such creditor's Allowed Claim.

35. **"Final Order"** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on the docket of such court which, not having been reversed, modified, amended, or stayed, and the time for seeking review of which by way of appeal, petition for certiorari, motion for reargument and rehearing or other review having expired, and as to which no appeal, petition for certiorari, motion for reargument and rehearing or other review is pending, has become conclusive of all matters adjudicated thereby and is in full force and effect.

092126\1\170812204.v2

36. **"Governmental Unit"** shall have the meaning set forth at §101(27) of the Bankruptcy Code.

37. **"Kahlon"** means Yossef Kahlon, the holder of the Judgment.

38. **"Lambe"** means Troy Lambe.

39. **"Lien"** means any charge against, or interest in, property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust or statutory lien.

40. **"Person"** shall have the meaning ascribed to such term in §101(41) of the Bankruptcy Code.

41. **"Petition Date"** means April 19, 2024, the date the Debtor filed her voluntary Chapter 13 petition with the Bankruptcy Court.

42. **"Plan"** means this plan of reorganization, as altered, amended or modified from time to time, and all attachments and exhibits thereto.

43. **"Plan Fund"** is the fund established by the Debtor from which Distributions shall be made to holders of Allowed Claims.

44. **"Priority Claim"** means any Allowed Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim, or (b) a Priority Tax Claim.

45. **"Priority Tax Claim"** means a Claim by a Governmental Unit entitled to priority pursuant to any provision of section 507(a)(8) of the Bankruptcy Code.

46. **"Professional"** or **"Professional Person"** means all attorneys, accountants, consultants or other Persons retained under an order of the Court on behalf of the Debtor in accordance with section 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to sections 327, 328, 330 and 331 of the Bankruptcy Code.

092126\1\170812204.v2

47. **"Pro Rata"** means with respect to the holder of an Allowed Unsecured Claim of a particular Class, the same proportion that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims of such Class.

48. **"Quick Borrow"** means Quick Borrow Inc., the holder of the first mortgage on the Apartment.

49. **"Reorganized Debtor"** shall mean the Debtor on or after the Effective Date and may refer to such Debtor by name as defined herein.

50. **"Scheduled"** means as set forth in the Schedules.

51. **"Schedules"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules, as the same have been or may be amended from time to time.

52. **"Secured Claim"** means a Claim that is either (a) secured by a valid perfected and enforceable Lien on property of the Debtor that is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value as set forth in an Allowed Claim or as determined by Final Order in accordance with section 506(a) or 1111(b) of the Bankruptcy Code, of the interest of the claimant in the Debtor's property securing such Claim, or (b) for which the holder asserts a valid setoff under section 553 of the Bankruptcy Code. To the extent that the amount claimed by the holder of a Secured Claim exceeds the value (as determined by the Court pursuant to section 506 of the Bankruptcy Code and Bankruptcy Rules 3012, 7001 and 9014 or as otherwise agreed to by the holder of such Claim and the Debtor) of the property securing such Claim, the holder of such Secured Claim shall have a Deficiency Claim equal to the amount of the excess.

092126\1\170812204.v2

53.     **"State Court Action"** means *Atlas Solar Holdings LLC v. Troy Lambe and Sunray Solar Inc.*, New York County Supreme Court Index No. 157465/2012.

54.     **"SunRay"** means SunRay Solar Inc.

55.     **"TD Bank"** means TD Bank, N.A.

56.     **"Trustee"** means the Subchapter V trustee, Yann Geron, Esq.

57.     **"Unsecured Claim"** means a Claim against the Debtor that is not an Administrative Claim, Priority Tax Claim, Priority Claim or Secured Claim.

58.     **"Verner"** means Paul Verner, Esq.

59.     **"Volvo Financial"** means Volvo Car Financial Services LLC.

**A.      <u>Interpretation, Rules of Construction, Computation of Time, and Choice of Law</u>**

Any term used in this Plan that is not otherwise defined in this Plan either in Article II.A (Definitions) or elsewhere, but that is used in the Bankruptcy Code, or the Bankruptcy Rules has the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular Article, Section, Subsection, or Clause contained in this Plan.  The word "including" shall mean "including, without limitation" and shall be interpreted in accordance with section 102(3) of the Bankruptcy Code.

Any reference in this Plan to an existing document or exhibit means such document or exhibit, as it may have been amended, restated, modified, or supplemented as of the Effective Date.

092126\1\170812204.v2

Captions and headings to Articles, Sections, Subsections, and Clauses in this Plan are inserted for convenience of reference only and shall neither constitute a part of this Plan nor in any way affect the interpretation of the provisions hereof.

Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

All exhibits to this Plan are incorporated into this Plan and shall be deemed to be included in this Plan, regardless of when they are filed.

Subject to the provisions of any contract, certificate, bylaws, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with federal law, including the Bankruptcy Code and Bankruptcy Rules.

## III

## DESIGNATION OF CLASSES OF CLAIMS

The following is a designation of the Classes of Claims under this Plan. Administrative Claims (including fees and expenses of Professional Persons allowed in a Final Order of the Bankruptcy Court) and Priority Claims have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code. A Claim is classified in a particular Class only to the extent the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class.

**A.      Class 1 – Quick Borrow's Secured Claim**

Class 1 consists of Quick Borrow's first mortgage secured by the Apartment.

**B.**    <u>**Class 2 – TD Bank's Secured Claim**</u>

Class 2 consists of TD Bank's Claim secured by 2019 Jeep Wrangler.

**C.**    <u>**Class 3 – Volvo Financial's Secured Claim**</u>

Class 3 consists of Volvo Financial's Claim secured by 2020 Volvo XC90.

**D.**    <u>**Class 4 – All Unsecured Claims**</u>

Class 4 consists of holders of all Unsecured Claims including Atlas and Kahlon's Claims based upon the Judgment. The Debtor estimates the total amount of Class 4 Unsecured Claims will be approximately $2 million.

**IV**

<u>**TREATMENT OF CLASSES OF CLAIMS AND UNCLASSIFIED CLAIMS**</u>

**A.**    <u>**Unclassified Claims**</u>

    **1.**    <u>**Administrative Claims**</u>

        **(a)**    <u>**Generally**</u>

Except as provided otherwise in this Article IV of this Plan, each holder of an Allowed Administrative Claim (*including*, without limitation, the fees and expenses incurred by Professional Persons) allowed by a Final Order of the Bankruptcy Court) shall be paid in full, in Cash, by the Debtor, the Reorganized Debtor, or the Disbursing Agent (i) on the later to occur of the Effective Date or the date the order allowing such Administrative Claim becomes a Final Order, or (ii) upon such other terms as may exist in the Debtor's or the Reorganized Debtor's ordinary course of business; or (iii) upon such terms as may exist pursuant to Order of the Bankruptcy Court or an agreement between such Allowed Administrative Claimholder and the Debtor or Reorganized Debtor.

### (b)      **Accounts Payable and Other Obligations Which Arose Post-Petition**

Administrative Claims representing obligations incurred by the Debtor or the Reorganized Debtor after the Confirmation Date shall not be subject to application to the Bankruptcy Court and may be paid by the Reorganized Debtor in the ordinary course of business and without further Bankruptcy Court approval.

### (c)      **Professional Fees and Expenses**

As more fully set forth herein, after the Confirmation Date, the Reorganized Debtor and/or the Trustee shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of the Professional Persons employed by the Reorganized Debtor in connection with the implementation and consummation of this Plan, the Claims reconciliation process and any other matters as to which the Reorganized Debtor shall engage or retain such Professional Persons. The fees and expenses of such Professional Persons shall be submitted monthly to the Reorganized Debtor by such Professional Persons in the form of a detailed invoice therefor and shall be paid by the Disbursing Agent within ten (10) Business Days after such submission. If the Reorganized Debtor disputes the reasonableness of any such invoice within the lesser of (a) ten (10) days of receipt of such proposed fees or (b) fourteen (14) days after transmittal to the Reorganized Debtor, the Disbursing Agent shall timely pay the undisputed portion of such invoice, and the Reorganized Debtor, or the affected Professional Person may, after attempting to resolve the dispute, submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice.

### 2.      **Priority Tax Claims**

Each holder of a Priority Tax Claim that has not been paid prior to the Effective Date shall be paid in full the Allowed Amount of its Priority Tax Claim over time as permitted by §1129(a)(9)(C) of the Bankruptcy Code. Specifically, the Reorganized Debtor shall pay the

Allowed Amount of each Priority Tax Claim in 48 equal monthly installments commencing on the first day of the month following the Effective Date. The interest rate on the deferred payments shall be in accordance with applicable state law as required by §511 of the Bankruptcy Code. The only filed Priority Tax Claims are Claim No. 1 in the amount of $12,191.95 filed by New York State Department of Taxation and Finance and Claim No. 9 in the amount of $93,021.45 filed by the Internal Revenue Service. The Debtor estimates the monthly payments will be approximately $2,400.

**B.**     <u>Treatment of Class 1 Secured Claim of Quick Borrow</u>

Class 1 is impaired under the Plan and entitled to vote for or against the Plan. Quick Borrow shall retain its Lien on the Apartment to the same extent and priority as existed on the Petition Date. Quick Borrow's Allowed Secured Claim shall be paid over a period of five (5) years from the Effective Date as follows. The Reorganized Debtor shall make monthly payments to Quick Borrow in the amount of $3,333. Quick Borrow's Allowed Secured Claim shall accrue post-confirmation interest at the rate of ten (10) % per annum. On the fifth-year anniversary from the Effective Date, the unpaid principal amount of Quick Borrow's Allowed Claim shall be paid in a balloon payment via a refinance and/or a lump sum Cash payment which the Reorganized Debtor shall obtain from outside sources. Notwithstanding the treatment of Quick Borrow's Class 1 Secured Claim, If Quick Borrow agrees to less favorable treatment, the Debtor retains the right to reach an agreement with Quick Borrow. The Debtor is current on her monthly payments to Quick Borrow.

**C.**     <u>Treatment of Class 2 Secured Claim of TD Bank</u>

Class 2 is unimpaired under the Plan and not entitled to vote for or against the Plan. The holder of the Class 2 Claim shall retain the legal, equitable, and contractual rights to which TD Bank is entitled to under the applicable loan documents. The Reorganized Debtor shall continue

to make all payments to TD Bank as required by the loan documents.

**D.**     **Treatment of Class 3 Secured Claim of Volvo Financial**

Class 3 is unimpaired under the Plan and not entitled to vote for or against the Plan. The holder of the Class 3 Claim shall retain the legal, equitable, and contractual rights to which Volvo Financial is entitled to under the applicable loan documents. The Reorganized Debtor shall continue to make all payments to Volvo Financial as required by the loan documents.

**E.**     **Treatment of Allowed Class 4 Unsecured Claims**

Holders of Allowed Class 4 Claims shall be paid in their *Pro Rata* share of the Debtor's disposable income, which is $1,000 per month, over the course of five (5) years following the Effective Date. Payments to Kahlon and/or Atlas on account of the Judgment shall not commence until the state court rules on the Debtor's most recent motion seeking vacatur of the Judgment. Alternatively, the Debtor is successful in settling her malpractice case against Verner or successful in recovering on account of her judgment against Lambe and SunRay, these funds shall be paid to Kahlon to reduce and/or satisfy Kahlon's Allowed Claim. Distributions to Allowed Class 4 Claims shall be made in quarterly installments. Class 4 is impaired under the Plan and therefore entitled to vote to accept or reject the Plan.

**V**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.**     **Treatment of Executory Contracts and Unexpired Leases**

As of the date the Plan is confirmed, unless rejected by a notice of rejection filed and served by the Debtor at least 10 days prior to the initial Confirmation Hearing, any executory contract or unexpired lease of entered into by the Debtor that has not yet been (a) assumed and assigned, or (b) assumed, shall be deemed to be assumed by the Debtor as of the Confirmation Date. The Confirmation Order shall be deemed an order under § 365(a) of the Bankruptcy Code

assuming any such executory contracts or leases of personal property.

## VI

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**A.**     **Implementation**

The Debtor shall take all necessary steps and perform all necessary acts to consummate the terms and conditions of the Plan; and shall comply with all orders of the Court, included as provided in the Plan. The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instruments required to effectuate the Plan.

**B.**     **Funding of the Plan**

Except as set forth elsewhere in the Plan, all payment required to be made under the Plan shall be made by the Debtor from her disposable income. The Debtor shall pay Quick Borrow, TD Bank and Volvo Financial directly. The Debtor shall deposit $1,000 into the Plan Fund each month commencing on the Effective Date. The Disbursing Agent shall make quarterly Distributions to holders of Allowed Class 4 Claims, *Pro Rata*, from the Plan Fund.

## VII

## LIQUIDATION ANALYSIS

In order to confirm the Plan, the Bankruptcy Court must find that all holders of Allowed Claims will receive at least as much under the Plan as they would receive in a Chapter 7 liquidation. This is also referred to as the best interests of creditors test.

The Debtor believes that a liquidation of her assets would provide the holders of Class 4 Allowed Claims with no greater recovery than under the Plan due to a variety of factors. The Debtor's primary assets are the Apartment and her ownership interest in the single-family home in

Florida. Based upon the value of the Apartment and Quick Borrow's mortgage, coupled with the cost of sale and any unpaid maintenance which would accrue if the Debtor ceased paying the monthly maintenance, the Debtor does not believe there would be a significant net recovery from the sale of the Apartment. With respect to the single-family home in Florida, the Debtor's husband would be entitled to 50% of the net proceeds from the sale after payment of the Bank of America mortgage. A liquidation analysis is annexed hereto as **Exhibit B**. Under the Plan, the Debtor proposes to devote her disposable income of $1,000 per month for sixty (60) months. This sum is greater than any reasonably projected recovery in a liquidation of the Debtor's assets.

**VIII**

**<u>PROVISIONS GOVERNING DISTRIBUTIONS</u>**

The Debtor shall serve as the Disbursing Agent and shall make distributions to holders of Administrative Claims and Creditors under the Plan. Pursuant to section 1194(b) of the Bankruptcy Code, if the Plan is confirmed pursuant to section 1191(b), the Trustee shall make payments under the Plan. The Debtor shall file semi-annual reports with the Court on or before June 30 and December 31 of each year following the Confirmation Date.

**IX**

**OBJECTIONS TO CLAIMS AND PROCEDURES<br>
<u>FOR RESOLVING AND TREATING CLAIMS</u>**

A.     **<u>Objections to Claims</u>**

All objections to Claims shall be filed by the Debtor and served on the holders of such Claims within sixty (60) days after the Confirmation Date. If the objection to a proof of claim that relates to a Disputed Claim has not been filed by the applicable date, the Claim to which the proof of claim relates shall be treated as an Allowed Claim for purposes of Distributions under the Plan.

20

**B.**    **Resolution of Disputed Claims**

Disputed Claims shall be divided into two (2) portions: the "non-disputed portion" and the "disputed portion." The Reorganized Debtor shall pay the non-disputed portion of a Disputed Claim in accordance with Plan provisions for payment of a Claim in its Class.

**C.**    **Estimation**

The Debtor or the Reorganized Debtor may, at any time, request that the Court estimate any Disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor have previously objected to such Claim.  The Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim.

**D.**    **Allowance of Disputed Claims**

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall, within thirty (30) days after the date on which the Claim becomes an Allowed Claim, or as soon thereafter as is practicable, pay to the holder of such Allowed Claim the amount of Cash that such holder would have been entitled to receive under the Plan if such disputed portion of such Claim had been an Allowed Claim on the Effective Date.

**X**

**PROVISIONS CONCERNING CAUSES OF ACTION**

The Debtor waives the right to commence any Claims arising under §§ 544 through 550 of the Bankruptcy Code.

**XI**

**PLAN INJUNCTION AND VESTING OF PROPERTY**

**1.**    **Injunction and Stays**

**Except as otherwise expressly provided herein and related documents, all persons or**

entities who have held, hold or may hold Claims against the Debtor are, with respect to any such Claims, permanently enjoined on and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner directly or indirectly, any suit, action or other proceeding of any kind (including without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the Reorganized Debtor, any of her property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entities, (b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against the Debtor or the Reorganized Debtor, any of her property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entity, or any property of any such transferee or successor, (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance or lien of any kind against the Debtor or the Reorganized Debtor, any of her property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities, and (d) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor or the Reorganized Debtor, any of her property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities.

## 2. Vesting of Property in the Reorganized Debtor

As of the Effective Date, all assets of the Debtor shall vest in the Reorganized Debtor, free and clear of all Liens, Claims and Interests, except as otherwise provided in this Plan or the Confirmation Order.

# XII

## CRAM DOWN

In the event Classes of Claims do not vote to accept this Plan, the Debtor reserves the right to invoke the "Cram Down" provisions of Bankruptcy Code §1129(b) as modified by §1191(b). In the event the Debtor exercises such right, the Debtor reserves the right to modify this Plan to the extent, if any, the confirmation of this Plan under §1129(b) and/or §1191(b) of the Bankruptcy Code requires modification.

# XIII

## RETENTION OF JURISDICTION

### A.      Retained Jurisdiction

From and after the Confirmation Date and until such time as the Chapter 11 Case are closed, the Bankruptcy Court shall retain jurisdiction over the Debtor's Chapter 11 Case for all purposes permitted under the Code, including, without limitation, the following:

1.      To hear and determine any dispute relating to the Plan.

2.      To hear and determine all issues arising out of any motions, applications, adversary proceedings or contested or litigated matters in the Chapter 11 Case pending at the Confirmation Date or commenced thereafter.

3.      To order recovery of any assets of the Debtor, whether title is presently held in the name of the Debtor or a third party.

4.      To hear and determine motions to approve the sale of assets of the Debtor under § 363 of the Bankruptcy Code and/or the rejection or assumption of executory contracts under § 365 of the Bankruptcy Code.

5.      To hear and determine all issues relating to any purchases, sales or contracts made or undertaken by the Debtor during the pendency of the Chapter 11 Case.

6.     To hear and determine all objections to Claims and all controversies concerning classification, allowance, valuation, liquidation, estimation, or satisfaction of Claims.

7.     To make orders allowing amendment of the Schedules filed in the Chapter 11 Case for any purpose including, without limitation, to prosecute objections to Claims not previously listed as disputed, contingent or unliquidated.

8.     To hear and determine all applications for compensation of professional and similar fees and reimbursement of expenses arising out of or relating to the case or any Claims.

9.     To hear and determine any and all motions to abandon property of the Debtor's Estate.

10.     To make such other orders or give such directions as permitted by § 1142 of the Bankruptcy Code.

11.     To consider and order any modifications or amendments requested to the Plan.

12.     To remedy any defect or omission or reconcile any inconsistency in the Plan or the Confirmation Order in such manner as may be necessary or desirable to carry out the purposes and intent of the Plan.

13.     To make all orders necessary or appropriate to carry out the provisions of the Plan.

14.     To enforce all orders previously entered by the Bankruptcy Court.

15.     To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the Bankruptcy Code.

## XIV

## <u>NOTICES</u>

Except as otherwise herein provided, all notices required to be made in or under this Plan shall be in writing and shall be mailed by registered or certified mail, return receipt requested:

If to the Debtor or the Disbursing Agent:

> Erica Itzhak
> 345 East 56th Street Apt 4D
> New York, NY 10022

With a copy to:          Tarter Krinsky & Drogin LLP
                                           1350 Broadway, 11th Floor
                                           New York, New York 10018
                                           Attn:   Scott S. Markowitz, Esq.

***and***

With a copy to:          Yann Geron, Esq.
                                           Geron Legal Advisors LLC
                                           370 Lexington Avenue
                                           Suite 1101
                                           New York, NY 10017

Any person may change the address at which he, she or it is to receive notices for purposes of this Plan by sending written notice pursuant to this provision to the Debtor (or the Disbursing Agent) as provided in this Article.

**XV**

**<u>MISCELLANEOUS PROVISIONS</u>**

**A.**      **<u>Applicable Law</u>**

Except to the extent the Bankruptcy Code or other federal law is applicable, the rights and obligations arising under this Plan are governed under New York Law.

**B.**      **<u>Unenforceability of Particular Provisions</u>**

Should any provision in this Plan be determined to be unenforceable in whole or in part, such determination shall in no way limit or affect the enforceability and operative effect of the remainder of this Plan, including any of its provisions to the extent not determined to be unenforceable.

092126\1\170812204.v2

## C.  **Revocation and Withdrawal Prior to Confirmation**

The Debtor reserves the right to revoke and withdraw this Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws this Plan, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void, and in such event nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor, or any other entity or to prejudice in any manner the rights of the Debtor, or any entity in any further proceedings involving the Debtor.

## D.  **Amendment and Modification**

The Debtor may propose amendments to, or modification of, this Plan at any time at or before Confirmation.  After Confirmation of this Plan, the Debtor may, with the approval of the Bankruptcy Court and so long as it does not materially adversely affect the treatment of any Claim, amend this Plan to remedy any defect or omission or reconsider any inconsistencies in this Plan or in the order of Confirmation as necessary or desirable to carry out the purpose and effect of this Plan. The Debtor also retains the right to modify the Plan as permitted by section 1193 of the Bankruptcy Code.

## E.  **Post-Confirmation Professional Fees**

Subsequent to the Confirmation Date, the Debtor or the Reorganized Debtor shall be authorized and directed to pay reasonable professional fees and expenses relating to the post-confirmation administration of its estate and this Plan incurred by the estate's Professionals including the Trustee.

092126\1\170812204.v2

**F.**    <u>**Binding Effect of Plan**</u>

Upon the Effective Date, all of the provisions of this Plan shall be binding on the Debtor, on all holders of Claims, and on all other entities who are affected (or whose interests are affected) in any manner by this Plan.

Dated: New York, New York
      July 17, 2024

By: <u>/s/ Erica Itzhak</u>
     Erica Itzhak


**TARTER KRINSKY & DROGIN LLP**
*Proposed Attorneys for Erica Itzhak*
*Debtor and Debtor-in-Possession*


By:  <u>/s/ Scott S. Markowitz</u>
     Scott S. Markowitz, Esq.
     1350 Broadway, 11th Floor
     New York, New York 10022
     Tel: (212) 216-8000
     Email: smarkowitz@tarterkrinsky.com

092126\1\170812204.v2

**EXHIBIT A**




**Craig Roth** 

Next Stop

Target Property

# 345 EAST 56 STREET, 4D

2 Beds - 1 Bath - -sft

# INDEX

**Median Sales Price** — Calculated by taking the middle value of the subset that includes all relevant sales prices.

**Median Sales Price per SFT** — Only calculated when size is available, this is the middle value of the subset that includes all relevant price per sft sales data.

**Average Sales Price** — Calculated by adding all final sales prices and dividing the sum by the total number of properties.

**Days on Market** — Calculated for sales that have listing information entered by the agent; more specifically, the contract date. This metric counts the number of days from first listing to contract signing. This report uses the median value of the subset that includes all relevant data.

**Seasonal Average** — Average of all previous values for the same point in time. Only goes back one extra year to what is visible in the chart

**Discount from Original Ask** — The median percentage difference between the original asking price and the closed sales price.

**Discount from Last Ask** — The median percentage difference between the asking price at the time of signing and the closed sales price

**Market Pulse** — A ratio of pending sales to active inventory, rises when leverage is shifting to sellers. Falls when leverage is shifting to buyers.





NextStop**NY**
Real Estate



Target Property
**345 EAST 56 STREET, 4D**
2 Beds - 1 Bath - -sft

| CMA Report | Building Breakdown | Comps Price Estimate |
| --- | --- | --- |

**Summary**

The price range we would expect
**4D** to trade

# $795k - $844k

Nearby competition is taking **83 days** to sign a contract while your building time to sell is **41 days**.

| In Building | In Area |
| --- | --- |
| **41 days**  | **83 days**  |



**Craig Roth** (Next Stop)
croth@nextstopny.com
Phone: 212.319.1668

Source: UrbanDigs.com





## Summary

### Negotiability

Similar sellers in the building are negotiating on average 1.6% below original asking price



In Building

**1.6%** Below Original Ask

In Area

**8.3%** Below Original Ask

In Building

**1.6%** Below Last Ask



In Area

**2.2%** Below Last Ask

### **Average Negotibaility** relative to Time on Market

for Midtown 2-Beds COOP Market

| <30 Days | 31-60 Days | 61-90 Days | 91-120 Days | >120 Days |
| --- | --- | --- | --- | --- |
| - Med Disc | **-8.4%** Med Disc | **-7.3%** Med Disc | **-7.4%** Med Disc | **-10.35%** Med Disc |

### **Price Reduction Schedule** for Midtown 2-Beds COOP Market

| **Day 30** | **6.2%** | → | **Day 90** | **7.7%** | → | **Day 317** | **3.9%** |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Price Cut #2 | | | Price Cut #3 | | | Price Cut #4 | |



**Craig Roth** (Next Stop)
croth@nextstopny.com
Phone: 212.319.1668

Source: UrbanDigs.com





## Properties Sold Stats:

| $827 | $800 | $852k | $830k | $2,200 | 1,000 | 41 | 1.6% |
|------|------|-------|-------|--------|-------|-----|------|
| Avg. PPSF | Median PPSF | Avg. Price | Median Price | Avg. Monthlies | Median Size | Days on Mkt | Listing Disc |

**Craig Roth** (Next Stop)
croth@nextstopny.com
Phone: 212.319.1668

**Source: UrbanDigs.com**



| | | | |
|---|---|---|---|
|  Target Property **345 EAST 56 STREET, 4D** 2 Beds - 1 Bath - -sft | CMA Report | **Building Breakdown** | Comps Price Estimate |

## 3 Listings Sold (Manhattan Search Report)

| $827 Avg. PPSF | $800 Median PPSF | $852k Avg. Price | $830k Median Price | $2,200 Avg. Monthl… | 1,000 Median Size | 41 Days on Mkt | 1.6% Listing Disc |
|---|---|---|---|---|---|---|---|

| Address Unit | Sold For | Property Type | Days on Market | Beds | Baths | Size | Price / SFT | Sold at |
|---|---|---|---|---|---|---|---|---|
| 345 E 56 ST - Unit 12C | **$830,000** | COOP | 80 | 2 | 1 | 1100 ft² | $754 / ft² | -7.26% from ask |
| 345 E 56 ST - Unit 16D | **$800,000** | COOP | 41 | 2 | 1 | 1000 ft² | $800 / ft² | Full ask |
| 345 E 56 ST - Unit 10C | **$925,000** | COOP | 22 | 2 | 1 | 1000 ft² | $925 / ft² | -1.6% from ask |



## NextStop**NY**
### Real Estate

 Target Property
**345 EAST 56 STREET, 4D**
2 Beds - 1 Bath - -sft

| CMA Report | Building Breakdown | Comps Price Estimate |
|---|---|---|

## Comparable Sales Report

| | | | IN BUILDING | |
|---|---|---|---|---|
| **COMP** | **10C** | **12C** | **6D** | **16D** |
| Sold | $925,000 | $830,000 | $850,000 | $800,000 |
| Monthlies | $2,079 | $2,308 | $2,013 | $2,214 |
| Renovation Adjustment | —<br>Not Yet Adjusted | —<br>Not Yet Adjusted | —<br>Not Yet Adjusted | —<br>Not Yet Adjusted |
| Market Adjustment | +$9,250<br>17 months ago | —<br>0 months ago | +$8,500<br>18 months ago | +$8,000<br>6 months ago |
| Views Adjustment | -$60,000<br>6 floors lower | -$80,000<br>8 floors lower | -$20,000<br>2 floors lower | -$120,000<br>12 floors lower |
| Size Adjustment | —<br>same size | —<br>same size | —<br>same size | —<br>same size |
| Other Adjustments | —<br>none | —<br>none | —<br>none | —<br>none |
| **Price Estimate for 4D based on each Comp** | $874,250 | $750,000 | $838,500 | $688,000 |



Suggested Price Summary for 4D

**$764,057 - $811,318**
$— - $— per sft

Optimal Price Range 4D

4D · 16D · 12C · 6D · 10C

---



**Craig Roth** (Next Stop)
croth@nextstopny.com
Phone: 212.319.1668

**Source: UrbanDigs.com**

**EXHIBIT B**

**ERICA ITZHAK**
Debtor-in-Possession
Estimated Realizable Value Upon Liquidation
September 2024

|  | Estimated Liquidation Value | |
|---|---|---|
| **CURRENT ASSETS** | | |
| **Real Properties:** | | |
| 345 East 56th Street, Apt. 4D, New York, NY 10022 | $ | 700,000.00[1] |
| 10775 Sunset Ridge Circle, Boynton Beach, FL 33473 | $ | 375,000.00[2] |
| 2019 Jeep Wrangler | $ | 25,000.00 |
| 2020 Volvo XC90 | $ | 35,000.00 |
| Cash | $ | 5,000.00 |
| Malpractice Case Against Paul Verner | $ | unknown |
| Judgment against Lambe & SunRay | $ | unknown |
| Miscellaneous assets | $ | 10,000.00 |
| **TOTAL ASSETS** | **$** | **1,150,000.00** |
| | | |
| **LIABILITIES** | | |
| **Secured Claims:** | | |
| Quick Borrow Inc. (Mortgage) | $ | 400,000.00 |
| TD Bank, N.A. (Lien on Automobile) | $ | 24,000.00 |
| Volvo Car Financial Services LLC (Lien on Automobile) | $ | 37,000.00 |
| Bank of America (Mortgage) | $ | 460,000.00 |
| **Total Secured Claims** | **$** | **921,000.00** |
| **Gross Liquidation Proceeds** | **$** | **229,000.00** |

---

[1] This value is based upon a quick sale. The apartment sale market in Manhattan for small apartments is soft.
[2] This also assumes a quick sale of the property. The Debtor's husband is entitled to 50% of the net sale proceeds.

**Estimated Chapter 11 Administrative Claims:**

      Debtor's Counsel Professional Fees and Subchapter V Trustee Fees    $    80,000.00

**Estimated Chapter 7 Administrative Claims:**

      Chapter 7 Trustee's Commissions    $    40,000.00

      Chapter 7 Trustee's Professional Fees    $    50,000.00

**Total Claims to be Paid Before Payments to Unsecured Creditors**    $    **1,091,000.00**

**Total Proceeds Available to Pay Unsecured Claims**    $    **59,000.00**