BFSNG Law Group, LLP
Heath S. Berger, Esq.
6851 Jericho Turnpike, Suite 250
Syosset, New York 11791
Tel: (516) 747-1136
hberger@bfslawfirm.com
Attorneys for Yossef Kahlon

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                                    Case No. 24-10669-jpm

**ERICA ITZHAK,**                                         Chapter 11

                      Debtor.        **OBJECTION TO CONFIRMATION OF THE DEBTOR'S CHAPTER 11 PLAN**

-----------------------------------------------------------X

      Yossef Kahlon (the "Movant" or "Kahlon"), by his attorneys, BFSNG Law Group LLP, respectfully objects to the Debtor's Chapter 11 case ("Objection"), denying confirmation of the Debtor's Chapter 11 Plan both on the grounds that the Debtor's Petition was filed in bad faith, misclassifies claims, and is otherwise not feasible under 11 U.S.C. § 1129(a)(11), together with such other and further relief as this Court deems just, proper, and equitable. In support of this Objection, Movant respectfully represents and alleges as follows:

          **I.**     **PRELIMINARY STATEMENT**

      1.     This Chapter 11 case is not a legitimate reorganization proceeding. It is a litigation tactic, commenced for the sole and improper purpose of delaying, frustrating, and diluting enforcement of a final, non-appealable state court judgment in excess of $1.5 million held by Kahlon. Through the Petition Date and continuing to the present, the Debtor has been indebted to

1

Kahlon pursuant to a judgment entered by the Supreme Court of the State of New York, Nassau County. Yet, the Debtor's proposed Plan is conspicuously deficient in its treatment of Kahlon's claim and fails to provide any meaningful or realistic mechanism for repayment. Distilled to its essence, this bankruptcy case does not serve a rehabilitative purpose; it serves only to impede Kahlon's lawful enforcement rights.

2. The Debtor is a practicing attorney who fully litigated the malpractice claims brought against her by Kahlon and Atlas Solar Holdings LLC, lost on the merits, exhausted her post-judgment remedies, failed in her attempt to vacate the judgment, and then filed this bankruptcy case only after Kahlon commenced enforcement proceedings, including execution against the Debtor's assets. The Debtor has no ongoing business in need of restructuring, no employees to preserve, no operations to reorganize, and no legitimate financial distress that this Court's equitable powers were intended to remedy. The Debtor's complete lack of a functioning business enterprise and her transparent effort to leverage Chapter 11 for tactical advantage constitute a textbook example of a bankruptcy filing that lacks rehabilitative purpose and is designed solely to obtain litigation leverage.

3. It is apposite to note that in its decision dated October 22, 2025, the Hon'ble Supreme Court of the State of New York, County of Nassau, while addressing the Debtor's continued litigious efforts to evade enforcement of the Kahlon Judgment, expressly observed the findings of the court below, which held that "Defendant Yitzhak (the "Debtor") had 'failed to exercise the care, skill, and diligence commonly possessed and exercised by a member of the legal profession.'" *See* Debtor's First Amended Plan at Exh. B, p 2, ECF No. 107.

4. The Debtors complete lack of functioning business and its apparent intent to leverage Chapter 11 for tactical advantage, constitutes a textbook example to show both that the

case was filed in bad faith and is otherwise not feasible, and requires dismissal under §§ 105(a) and 1112(b), or in the alternative, denying confirmation of Debtor's Chapter 11 Plan. As stated in *In re Gonic Realty Trust*, 909 F.2d 624, 627 (1st Cir. 1990):

> The purpose of the Bankruptcy Code is essentially to encourage financial restructuring and payments to creditors while preserving jobs and shareholder interests…
> Upon review, we find no abuse of discretion. The bankruptcy court properly concluded that the malpractice counterclaim is not a bankruptcy court issue, and had nothing to do with the rehabilitative character of the bankruptcy procedures. Thus, with no business left to reorganize, Chapter 11 proceedings were not serving the purpose of rehabilitating the debtor's business. See *In re Schlangen, 91 B.R. at 837*. We agree with the district court that the bankruptcy judge acted pursuant to its powers, that it properly granted the motion for dismissal and did not abuse its discretion in so doing.

*See also In re MatlinPaterson Global Opportunities Partners II L.P.*, 644 BR 418 (Bankr. S.D.N.Y. 2022) citing *In re Briggs-Cockerham, L.L.C.*, 2010 Bankr. LEXIS 4132 (Bankr. N.D. Tex Nov. 23, 2010) ("debtor with no hard assets, operations, employees or ongoing business lacked reasonable likelihood of rehabilitation"); *Taberna Preferred Funding IV, LTD. v. Opportunities II Ltd. In re Taberna Preferred Funding IV, Ltd.*, 594 BR 576, 604 ("It is undisputed that [the debtor] is not an operating business, and there is therefore no rehabilitative objective that can be served by allowing a bankruptcy case to proceed").

5. The Debtor's proposed Plan is patently unconfirmable. The Plan concedes that the Debtor lacks the financial capacity to satisfy her substantial obligations to creditors, including Kahlon, and instead proposes to force a judgment creditor with a $1.5 million allowed claim to accept nominal payments over three years, coupled with speculative and contingent litigation proceeds that may never materialize. The Plan is built almost entirely on uncertain future recoveries from a malpractice action against third-party counsel and on an implausible representation of minimal "disposable income," without any competent evidentiary support. Such

3

conjectural funding sources cannot satisfy the feasibility requirement of 11 U.S.C. § 1129(a)(11).

6. Moreover, the Plan fails to demonstrate good faith, fails the best interests of creditors test, and is fundamentally unfair and inequitable. The Debtor has provided no meaningful financial disclosure, no binding funding commitments, and no credible explanation as to how she will maintain living expenses, operate her law practice, fund litigation, and make Plan payments simultaneously. The Debtor's repeated omissions and evasions underscore her inability to reorganize and confirm that this case is being used as a litigation bunker rather than as a vehicle for legitimate financial rehabilitation.

7. The Plan improperly treats Quick Borrow as a secured creditor based on a UCC financing statement filed on February 15, 2024, well within the ninety (90) day preference period preceding the Petition Date, despite the fact that such lien is avoidable as a matter of law under 11 U.S.C. § 547. This selective elevation of a favored insider or friendly lender, while simultaneously stripping Kahlon of lien rights arising from the same temporal window, exposes the Debtor's inequitable motive and manipulation of the Bankruptcy Code. A Plan premised on an avoidable transfer, and designed to insulate a preferred creditor while impairing a $1.5 million judgment creditor, is not proposed in good faith, is not feasible, and cannot be confirmed.

8. In sum, this case presents the paradigmatic example of a malpractice judgment debtor attempting to misuse Chapter 11 and Subchapter V to evade the consequences of professional misconduct and a final state court judgment. Because the Debtor's Plan is not proposed in good faith, is not feasible, fails the best interests of creditors test, and serves no legitimate rehabilitative purpose, confirmation must be denied.

## II. JURISDICTION, VENUE and PARTIES

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The statutory predicates for the relief requested herein to deny confirmation of a Chapter 11 plan that fails to satisfy the feasibility requirement under 11 U.S.C. §§ 1129(a)(1), 1129(a)(3), and 1129(a)(11).

11. Plaintiff Yossef Kahlon is an individual with a mailing address of 9 Straham Court, Great Neck, NY 11023. 6. Defendant Erica Itzhak is the debtor in the above-captioned Chapter 11 case.

12. The Debtor is a resident of the State of New York, is a licensed attorney, and purports to reside at 345 East 56th Street, Apt 4D, New York, NY 10022.

## III. FACTUAL BACKGROUND

### State Court Action

13. Kahlon is the owner and principal of Atlas Solar Holdings LLC ("Atlas"). Several years prior to the Petition Date, Atlas retained the Debtor, an attorney, to pursue claims against third parties. The Debtor's mishandling of that litigation gave rise to malpractice claims.

14. In March 2016, Kahlon and Atlas commenced a legal malpractice action against the Debtor in the Supreme Court of the State of New York, Nassau County (the "Kahlon Malpractice Action").

15. Kahlon and Atlas obtained summary judgment against the Debtor in the amount of $1 million, plus interest. On April 29, 2022, a judgment was entered against the Debtor in the

amount of $1,503,013.70 (the "Kahlon Judgment").

16. The Debtor thereafter attempted to evade the consequences of that judgment through a series of procedural maneuvers, including filing motions to vacate, seeking removal to federal court, and attempting to invoke abstention doctrines. All such efforts failed. The Kahlon Judgment is final, valid, and fully enforceable.

17. In an effort to enforce the Kahlon Judgment, Movant caused an execution to be issued against the Debtor's cooperative apartment shares.

18. Only after enforcement was commenced did the Debtor file this bankruptcy case.

### Bankruptcy Court

19. On April 19, 2024, the Debtor filed a Chapter 13 bankruptcy petition with the Clerk of the Court ("Petition Date"). [ECF No. 1].

20. Subsequent thereto, the Debtor filed a motion to convert her Chapter 13 case to a Subchapter V Chapter 11 case. By order dated June 28, 2024, the Debtor's bankruptcy case was converted to a Subchapter V. [ECF No. 30].

21. Yann Geron, Esq. was appointed the Subchapter V trustee.

22. On December 4, 2025, the Debtor filed its *First Amended* Chapter *11 Subchapter V Plan of Reorganization* (the "Plan") [ECF No. 107].

### Adversary Proceeding

23. On March 17, 2025, Kahlon filed a Complaint seeking a determination that the debt owed to Kahlon is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6). *See* ECF 1. Adv. Pro. 25-01042-jpm.

24. The Plan provides no meaningful treatment, reserve, contingency, or alternative funding plan addressing the possibility that the Court enters judgment in Kahlon's favor in the Adversary case. If the debt is determined nondischargeable, the Debtor will remain fully liable for the Kahlon Judgment post-confirmation, exposing the Plan as illusory and inherently infeasible.

25. The timing of the filing, the procedural history, and the structure of the Plan demonstrate that this case was filed for the sole purpose of frustrating Movant's enforcement rights, duly admitted by the Debtor. *See* Plan, p 5.

26. The Debtor's own Plan admits that Movant holds an allowed unsecured claim in excess of $1.5 million and that total unsecured claims approximate $2.1 million.

27. The Plan proposes to pay unsecured creditors, including Movant, only their pro rata share of $1,000 per month for 36 months, together with 25% of any net recovery from a speculative malpractice action against third-party counsel.

28. The Debtor remains in possession of significant assets, including a cooperative apartment in Manhattan, an ownership interest in Florida real property, a law practice, and various indemnification claims.

## IV. ARGUMENT

### A. THE DEBTOR'S PLAN IS NOT FEASIBLE

29. Section 1129(a)(11) of the Bankruptcy Code, which codifies the feasibility requirement, permits confirmation only if the plan "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan . . . ." *In re Paragon Offshore PLC,* No. 16-10386 (CSS), 2016 WL 6699318, at *16 (Bankr. D. Del. Nov. 15, 2016) (quoting 11 U.S.C. § 1129(a)(11) and collecting cases). The

Debtors must show that their plan presents "a workable scheme of reorganization and operation from which there may be a reasonable expectation of success." *In re One Times Square Assocs. Ltd. P'Ship*, 159 B.R. 695, 709 (Bankr. S.D.N.Y. 1993) (internal citations omitted); see also *In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415, 421-22 (Bankr. S.D.N.Y. 2003) (a plan must have "a reasonable likelihood of success"). Feasibility also considers whether a debtor is able to consummate its plan according to its terms following confirmation in light of contingencies. *In re Trenton Ridge Invs., LLC*, 461 B.R. 440, 490-91 (Bankr. S.D. Ohio 2011) ("[I]n order to establish feasibility, [debtor] must provide evidence that [financing parties] would have the ability to provide the necessary infusion of cash.").

30. The Debtor's Plan is not feasible because it is built almost entirely on speculative, contingent, and unproven sources of funding. The Plan proposes to fund distributions to unsecured creditors, including Kahlon, through (i) alleged "disposable income" of $1,000 per month, and (ii) twenty-five percent (25%) of any net recovery from a malpractice action against third-party counsel (the "Verner Malpractice Action"). The Debtor provides no competent evidence demonstrating that either source is reliable, sufficient, or even likely to materialize. The Debtor's admission that her Plan depends on future litigation recoveries is fatal to feasibility.

31. The Debtor offers no financial statements, no profit and loss reports, no tax returns, no bank records, and no independent financial analysis to substantiate her claim that she has only $1,000 per month in disposable income. To the contrary, Debtor is the Managing Attorney at The Yitzhak Law Group, maintains an active legal practice and it is unfathomable that a practicing attorney operating her own law firm in New York City, with ongoing professional income and business operations, would generate only $1,000 per month in disposable income. This assertion is facially implausible given that the Debtor is a practicing attorney in New York City who owns

8

a cooperative apartment in Manhattan, an interest in real property in Florida, two vehicles, and operates a law practice. The Debtor has made no showing as to how she will maintain her living expenses, operate her practice, service secured debt, fund ongoing litigation, and simultaneously make Plan payments. Unsupported, self-serving projections cannot satisfy the feasibility requirement under § 1129(a)(11).

32. Equally defective is the Plan's reliance on potential recoveries from the Verner Malpractice Action. That action remains pending, has not been tried, has not been settled, and may never result in any recovery. Any recovery is subject to defenses, dispositive motions, trial risk, appeal risk, and collection risk. Courts have repeatedly held that "[a] plan dependent on an uncertain litigation outcome cannot be confirmed because it simply is not feasible". See *In re State St. Assocs., L.P.*, 342 B.R. 32 (Bankr. N.D.N.Y. 2005), 2005 Bankr. LEXIS 2884 * 44.

33. The speculative nature of the Debtor's funding sources is underscored by the fact that the Plan provides no timeline for resolution of the Verner Malpractice Action, no litigation budget, no explanation of anticipated costs, and no assurance that the Debtor can even carry the litigation to conclusion. The Debtor's suggestion that unsecured creditors should wait three years for minimal monthly payments and an undefined share of hypothetical litigation proceeds is precisely the type of conjectural funding scheme that courts reject as infeasible.

34. Moreover, the Debtor's Plan fails to account for the magnitude of Kahlon's allowed claim, which exceeds $1.5 million, and the aggregate unsecured claims of approximately $2.1 million. The proposed payment of $1,000 per month, even if fully performed, would yield only $36,000 over three years to be shared pro rata among all unsecured creditors. This token distribution, when juxtaposed against the size of the claims and the absence of any reliable supplemental funding, confirms that the Plan does not present a realistic or workable path to

reorganization.

35. The Court has previously recognized the dangers inherent in plans that defer performance based on uncertain future events. Here, the Debtor asks this Court to confirm a Plan that effectively places all risk on creditors, particularly Kahlon, while insulating the Debtor from the consequences of a final malpractice judgment. Such a contingent and speculative proposal falls squarely short of the feasibility requirement under 11 U.S.C. § 1129(a)(11) and mandates denial of confirmation.

36. The Debtor's Plan is independently infeasible because it entirely disregards the pending adversary proceeding commenced by Kahlon seeking a determination that the Kahlon Judgment is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6). If Kahlon prevails in the adversary proceeding, the Debtor will remain fully liable for the Kahlon Judgment post-confirmation and subject to immediate enforcement remedies outside the Plan.

37. Based on the foregoing, Kahlon requests that the Court deny confirmation of the Debtor's Chapter 11 Plan on the grounds that it is not feasible under 11 U.S.C. § 1129(a)(11). Kahlon further requests such other and further relief as the Court deems just, proper, and equitable under the circumstances.

**B. THE PLAN IS NOT CONFIRMABLE BECAUSE IT IS PREMISED ON AN AVOIDABLE PREFERENTIAL LIEN HELD BY QUICK BORROW**

38. The Debtor's Plan is further defective because it treats Quick Borrow as the holder of a valid secured claim notwithstanding the fact that Quick Borrow's UCC financing statement was filed on February 15, 2024, within ninety (90) days of the Petition Date. *See* Claim # 16 filed by Quick Borrow. A plan that is built on an avoidable transfer, misclassifies claims, and elevates an avoidable lien to secured status does not comply with the Bankruptcy Code and cannot be

confirmed under 11 U.S.C. §§ 1129(a)(1), 1129(a)(3), and 1129(a)(11).

39. In this very case, the Court has already ruled that Kahlon's execution, delivered to the Sheriff within the ninety-day period preceding the Petition Date, constituted an avoidable preferential transfer under 11 U.S.C. § 547 and accordingly reclassified Kahlon's claim as unsecured. *See* ECF No. 17; *Erica Itzhak v. Yossef Kahlon*, 25-01029-jpm. The Court has therefore already determined that the elements of a preference were satisfied in this case, including insolvency, transfer within the preference period, and the receipt of more than would be received in a Chapter 7 liquidation.

40. The same statutory analysis applies with equal or greater force to Quick Borrow. Under 11 U.S.C. § 547(e), the "transfer" of a security interest occurs upon perfection. Where, as here, a creditor's security interest is perfected within ninety (90) days of the Petition Date, the transfer is deemed to occur within the preference period and is avoidable as a matter of law.

41. Quick Borrow did not perfect its security interest until February 15, 2024, well after the underlying loan was made and well within the ninety-day preference window. Accordingly, Quick Borrow's lien is avoidable under 11 U.S.C. § 547 and should be reclassified as an unsecured claim, just as the Court has already done with Kahlon's execution.

42. The Debtor cannot selectively apply the preference statute, avoiding Kahlon's lien while preserving Quick Borrow's. Such internally inconsistent and legally indefensible treatment violates the fundamental principles of equality of distribution and undermines the integrity of the bankruptcy process. A debtor may not shield a favored creditor from preference exposure while stripping another creditor of lien rights arising from the same temporal and legal context.

43. The Debtor's Plan nevertheless elevates Quick Borrow to secured status and

structures the distribution scheme around that assumption, while relegating Kahlon, the holder of a final, non-appealable $1.5 million judgment, to a deeply impaired unsecured class. This improper classification distorts the priority scheme mandated by the Bankruptcy Code and independently violates 11 U.S.C. §§ 1122 and 1123. Section 1129(a)(1) requires that the Plan comply with applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). The Plan, therefore, must satisfy sections 1122 and 1123 of the Bankruptcy Code. *In re Texaco Inc.,* 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988) ("In determining whether a plan complies with section 1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to the classification of claims and the contents of a plan of reorganization").

44. Here, the Debtor's entire secured structure collapses if Quick Borrow is properly reclassified as unsecured, rendering the Plan unworkable and not feasible within the meaning of § 1129(a)(11).

45. Moreover, the Debtor's failure to disclose, reserve, or even acknowledge this preference exposure in the Plan further underscores the lack of good faith. The Plan does not reserve avoidance actions against Quick Borrow, and does not disclose the timing of perfection. This selective omission is incompatible with the Debtor's fiduciary duties and further demonstrates that the Plan is being proposed by improper means and for an improper purpose.

46. The Plan admits that the Debtor's cooperative apartment located at 345 East 56th Street has a value between $795,000 and $850,000, yet artificially suppresses the estate's distributable value to unsecured creditors by treating approximately $400,000 allegedly owed to Quick Borrow as secured debt. If, as the Bankruptcy Code requires, Quick Borrow's lien is avoided and reclassified as unsecured, the liquidation analysis changes dramatically, leaving hundreds of thousands of dollars in additional equity available for distribution to unsecured creditors, including

Kahlon.

47. At a minimum, the existence of a serious, unresolved preference issue precludes confirmation. A plan may not be confirmed where material avoidance actions remain unaddressed and unresolved, and where the plan's structure is predicated on ignoring the outcome of such actions.

48. Accordingly, because the Debtor's Plan is premised on an avoidable preferential lien, improperly elevates Quick Borrow, misclassifies claims, and distorts the statutory priority scheme, the Plan does not comply with the Bankruptcy Code and must be denied confirmation pursuant to 11 U.S.C. §§ 1129(a)(1), 1129(a)(3), and 1129(a)(11).

## C. THE PLAN IS NOT PROPOSED IN GOOD FAITH – 11 U.S.C. § 1129(a)(3)

49. Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3); *see also In re Gaston & Snow*, Nos. 93-8517 (JGK), 93-8628 (JGK), 1996 U.S. Dist. LEXIS 17774, 1996 WL 694421, at *9 (S.D.N.Y. Dec. 4, 1996). The Second Circuit has construed this good faith standard as requiring a showing that "the plan was proposed with 'honesty and good intentions' and 'with a basis for expecting that a reorganization can be effected.'" *See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988); see also In re Texaco, Inc., 84 B.R. at 901-07 ("[I]n the context of a chapter 11 reorganization . . . a plan is considered proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.") (citations and quotations omitted). Additionally, courts generally hold that "good faith" should be evaluated in light of the totality of the circumstances surrounding [*11] confirmation. *See, e.g., In re Cellular Info. Sys., Inc.*, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994) (collecting cases).

13

50. The Debtor did not file this case in response to a collapse of business operations, loss of going concern value, or inability to meet ordinary trade obligations. Rather, the Debtor filed only after she lost on the merits of the malpractice action, failed in her attempt to vacate the judgment, and faced active enforcement by Kahlon. The timing and sequence of events leave no doubt that the Debtor's purpose in filing and in proposing the Plan was to derail Kahlon's lawful collection efforts.

51. The Debtor's Plan does not propose any meaningful restructuring of business operations, reduction of overhead, modification of secured debt, or rehabilitation of a distressed enterprise. The Debtor does not propose to reorganize her law practice, reduce expenses, or alter the structure of her professional operations. Instead, the Plan is narrowly targeted at one objective: diluting and delaying payment of the Kahlon Judgment.

52. The Plan's structure further evidences bad faith. The Debtor proposes to retain all of her assets, continue operating her law practice, pursue litigation for her own benefit, and shift virtually all risk to creditors, particularly Kahlon, by conditioning meaningful recovery on uncertain future events. The Debtor asks this Court to bless a Plan under which Kahlon must wait years for nominal payments and speculative litigation proceeds, while the Debtor continues her professional career unencumbered by the consequences of a final judgment.

53. The Debtor's Plan is therefore not proposed in good faith within the meaning of 11 U.S.C. § 1129(a)(3). It is proposed for an improper purpose, by improper means, and with the primary intent to frustrate the enforcement of a valid state court judgment. Accordingly, confirmation must be denied.

54. No previous application for the relief requesting in this Motion has been previously filed in this case.

**WHEREFORE**, Movant Yossef Kahlon respectfully requests that the Court enter an Order denying confirmation of the Debtor's Chapter 11 Plan in its entirety on the grounds that the Plan is not proposed in good faith, misclassifies claims, is not feasible, and fails to comply with the applicable provisions of the Bankruptcy Code, together with such other and further relief as this Court deems just, proper, and equitable.

Dated: Syosset, New York
January 16, 2026

                                        BFSNG LAW GROUP, L.L.P.
                                        Attorneys for Yossef Kahlon

                                        By:/s/ *Heath S. Berger*
                                          Heath S. Berger, Esq.
                                        6851 Jericho Turnpike, Suite 250
                                        Syosset, New York 11791
                                        Tel: (516) 747-1136
                                        hberger@bfslawfirm.com